UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL A. GRESHAM, | Case No.: 3:18-cv-00498-MMD-WGC |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | |
| CALDWELL-BARR, et. al., | Re: ECF No. 30 |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendant's Motion for Summary Judgment. (ECF Nos. 31, 32-1-32-11; 35-1, 35-2.) Plaintiff filed a response. (ECF No. 41.) Defendant does not appear to have filed a reply brief.

In his response to the motion for summary judgment, Plaintiff stated that he could not mount any effective opposition to the motion for summary judgment as long as the defense refused to provide Plaintiff with the sealed exhibits. The motion for summary judgment was served on Plaintiff electronically at LCC by emailing the document to lcclawlibrary@doc.nv.gov in accordance with the e-filing program. (ECF No. 30 at 17.) The motion for leave to file exhibits under seal specifically states that the exhibits would be sent to the "Northern Nevada Correctional Center Warden" so that Plaintiff could review them. (ECF No. 31 at 2.) The certificate of service for the motion for leave to file the exhibits under seal states that it was served on Plaintiff at LCC, but lists an email address of nncclawlibrary@doc.nv.gov.

(ECF No. 31 at 4.) In his request for an extension of time to respond to the motion for summary judgment, Plaintiff pointed out that the motion said the exhibits would be sent to NNCC so Plaintiff could review them, and claimed that the Attorney General's Office intentionally mailed the exhibits to the wrong facility to delay Plaintiff's ability to pursue this action. Plaintiff claimed he did not have the exhibits; therefore, he requested an extension of time to respond to the motion, which the court granted. (ECF No. 36.) Defendant filed declarations stating that copies of the exhibits filed under seal were in fact sent to the warden's office at LCC so that Plaintiff could kite to review the records. (ECF Nos. 45-1, 45-2, 45-3.)

Plaintiff then filed a notice of change of address, indicating he was no longer in prison. (ECF No. 43.) The court ordered Defendant to serve Plaintiff by mail with the sealed records at his new address of record, and gave Plaintiff until June 4, 2021, to file a supplemental response. (ECF No. 46.) No supplemental response has been filed.

After a thorough review, it is recommended that Defendant's motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 8.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

On screening, liberally construing the allegations, the court allowed Plaintiff to proceed with a due process claim against Dr. Caldwell-Barr, based on allegations that she gave him no notice or opportunity to be heard to prevent her disclosure of confidential information she obtained in his therapy sessions to the parole board when Plaintiff was being reviewed for possible parole. All other claims and parties (including DelPorto and Dzurenda) were dismissed.

1  Dr. Caldwell-Barr moves for summary judgment, arguing: (1) she did not deprive
2  Plaintiff of life, liberty or property without due process of law; and (2) she is entitled to qualified
3  immunity.

## II. LEGAL STANDARD

5  The legal standard governing this motion is well settled: a party is entitled to summary
6  judgment when "the movant shows that there is no genuine issue as to any material fact and the
7  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*
8  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the
9  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*
10 *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome
11 of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary
12 judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the
13 other hand, where reasonable minds could differ on the material facts at issue, summary
14 judgment is not appropriate. *Anderson*, 477 U.S. at 250.

15 "The purpose of summary judgment is to avoid unnecessary trials when there is no
16 dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18
17 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose
18 of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477
19 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that
20 one party must prevail as a matter of law"). In considering a motion for summary judgment, all
21 reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*
22 *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*
23 *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

Plaintiff alleges that Dr. Caldwell-Barr, a psychologist at NNCC, was the assigned administrator of the Senior Structured Living Program (SSLP) at NNCC and facilitated therapy groups from January of 2016 through 2018. Plaintiff was housed in the SSLP housing unit since early 2015, and participated in a therapy group facilitated by Dr. Caldwell-Barr from January of 2016 through late August of 2016 as part of NDOC's Sexual Treatment of Offenders in Prison (STOP) program. Plaintiff regarded the therapy sessions he attended to be private and confidential between a doctor and patient. He claims Dr. Caldwell-Barr told him that everything he said in the therapy group would be held confidence.

Dr. Caldwell-Barr completed a Static-99R questionnaire, which Nevada law requires be completed to assess a parole applicant's current propensity to sexually reoffend, and be submitted to the parole board. Then, Dr. Caldwell-Barr appeared and testified at Plaintiff's scheduled parole application hearing before the parole board in August of 2016 that she had significantly increased Plaintiff's Static-99R score based on her personal beliefs pertaining to Plaintiff. Plaintiff avers that Dr. Caldwell-Barr said she completed the questionnaire and increased the score from a negative three to a score of four. A score of negative three is considered a very low risk to reoffend and a score of four is rated as an above-average risk. Plaintiff also claims that Dr. Caldwell-Barr disclosed information to the parole board about Plaintiff of a personal and sensitive nature that could only have been obtained during a therapy session with Plaintiff. She told the parole board she believed Plaintiff would reoffend as soon as

he was released. Plaintiff received a three-year denial of his parole application, which he contends was partially a result of Dr. Caldwell-Barr changing the Static-99R score and divulging the confidential information.

Defendant submits evidence that inmates convicted of a sex offense who appear for a parole hearing, are required to be assessed to determine the inmate's risk to reoffend in a sexual manner under Nevada Revised Statute (NRS) 213.1214(1).

While in NDOC, Plaintiff agreed to participate in NDOC's STOP program. (ECF No. 32-2.) He signed a consent for participation in this treatment program which included "acknowledgement of non-confidentiality and waiver of confidentiality throughout [his] involvement in the program." (*Id*. at 2.) He further acknowledged that a report regarding his involvement in the program would be provided to the Nevada Parole Board, which would include an assessment of his sexual abuse problem, his progress, and that the STOP facilitator/correctional psychologist would render a professional opinion in the report about his risk for re-offending and/or potential danger to community safety. (*Id*.) Plaintiff also signed a consent for treatment in the STOP program. (ECF No. 32-3.)

Plaintiff's May 27, 2016 parole report contained a risk assessment that had a dynamic score of negative three, and a total risk level of two, which was considered low risk. (ECF No. 32-5 at 5.)

Dr. Caldwell-Barr completed a Static-99R coding form on July 6, 2016. The Static-99R form gives risk assessment categories of:

-3 through 1 = low risk

2, 3 = low-moderate risk

4, 5 = moderate-high risk

6 plus = high risk

(ECF No. 32-6 at 2.)

Dr. Caldwell-Barr assigned Plaintiff a total score of one, which put him in the category of negative three to one, which is considered low risk. (*Id*.) There are handwritten notes at the bottom of the form that state the score of one is: "likely an underestimate of [Plaintiff's] risk to reoffend. Although he has completed STOP 1 treatment, he continues to maintain that the relationship with his victim was 'consensual' and that of a girlfriend." (*Id*.)

On July 21, 2016, Plaintiff acknowledged having notice of a parole board hearing on August 10, 2016. (ECF No. 32-7 at 2.)

Plaintiff was denied parole on August 10, 2016. The reasons listed for denial include impact on victim and/or community and prior conviction for a sexual offense. (ECF No. 32-8 at 2.)

The parole board assigned him a *static* risk score of 7, which is comprised of two points for his age at first arrest, two points for prior revocations, two points for drug/alcohol use/abuse, and one point for his male gender. He had a *dynamic* risk score of negative three, which appears to have been reached by giving him negative one point each for his current age, his programming, and his disciplinary conduct. As such, he was assigned a *total* risk score of 4, which was noted as being considered *low* risk[1]. (ECF No. 32-8 at 3.)

The board listed the following aggravating factors that were applicable in his case: the impact on the victim and/or community; the victim was a minor female was 15 at the time of the offense; the inmate had a previous conviction for two counts of attempted lewdness with a child

---

[1] This is apparently according to a different guideline than that used for the Static-99R form, which put a score of 4 in the moderate-high risk range. (*See* ECF No. 32-6 at 2.)

under the age of 14; and the inmate committed the offense while serving a term of probation for a previous felony conviction. The board also found the following mitigating factors applied: participation in programs specific to addressing the behavior that led to incarceration, he had family support, he had arranged for a residence, and he would re-apply for veteran's and Social Security benefits. (*Id.*)

Plaintiff was given the notice that he was denied parole around August 19, 2016. (ECF No. 32-4 at 13.)

Plaintiff was also assigned a total risk level score of four (which was again described as low risk to reoffend), at a subsequent parole hearing on June 14, 2019. (ECF No. 32-9 at 6.)

Another prison psychologist, Dr. Murakami, filled out a Static-99R form for Plaintiff on July 6, 2019. Like Dr. Caldwell-Barr, Dr. Murakami's Static-99R form also assigned Plaintiff a total risk score of one. Dr. Murakami similarly stated that the score likely underrepresented the risk presented by Plaintiff, due to the age at his first sexual offense and the fact that he committed the current offense while on probation for two charges for attempted lewdness with a minor. Dr. Murakami opined that it was likely his risk to reoffend sexually was in the above-average risk range. (ECF No. 32-10 at 2.)

A party asserting that a fact is genuinely disputed must support that assertion by "*citing to particular parts of materials in the record*" or showing that the materials cited by the other side do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1) (emphasis added). "The court need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). Preliminarily, the court notes that Plaintiff's response includes over 160 pages of exhibits, but Plaintiff's response in large part fails to point to any particular exhibit as supportive of his positions to demonstrate a genuine dispute of material fact.

1    In any event, the court finds that Dr. Caldwell-Barr is entitled to qualified immunity. The qualified immunity analysis consists of two factors: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017); *see also Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullinex v. Luna*, 136 S.Ct. 305, 308 (2015) (internal quotation marks and citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Thus, courts begin the "inquiry into whether [the] constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). Clearly established law should not be defined "at a high level of generality." *al-Kidd,* 563 U.S. at 742. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Ames v. King County, Washington,* 846 F.3d 340, 347-48 (9th Cir. 2017) (quoting *Stanton v. Sims,* 134 S.Ct. 3, 5 (2013)). The plaintiff bears the burden of showing the rights allegedly violated were clearly established. *Shafer,* 868 F.3d at 1118.

First, taking the facts in the light most favorable to Plaintiff, it does not appear that Dr. Caldwell-Barr violated Plaintiff's rights. Plaintiff asserts that Dr. Caldwell-Barr's statements in her Static-99R form that Plaintiff continued to maintain that the relationship with his victim was 'consensual' and that of a girlfriend were taken from his group therapy sessions and

improperly divulged to the parole board, resulting in an increase in his total risk assessment score and denial of parole.

Even assuming that Dr. Caldwell-Barr did take these statements from group therapy sessions, Plaintiff does not deny that he signed the STOP agreement which included an acknowledgement of non-confidentiality and waiver of confidentiality "*throughout* [his] involvement in the program." (ECF No. 32-2 at 2.) Plaintiff argues that the agreement did not specifically state that confidential statements made in the therapy setting would be disclosed, but this is contradicted by a reading of the agreement, which states: "I understand that a report regarding my involvement in programs will be provided to the Nevada Parole Board. … I understand that the STOP facilitator/correctional psychologist will render a professional opinion in these reports about my risk for re-offending and/or potential danger to community safety." (ECF No. 32-2 at 2.)

Moreover, Plaintiff does not dispute that he was not required to participate in STOP in order to be considered for parole, and he expressly acknowledged that participation in the program in no way guaranteed that parole would be granted. (*See* ECF No. 32-3 at 4.)

Finally, as Defendants point out, while Plaintiff claims he had a risk score of negative three prior to the hearing, this was only part of his score (his *dynamic* risk score) in May of 2016. His *total* risk assessment score on May 27, 2016, was a two, which was considered low risk. (ECF No. 32-5 at 5.) Comparing his parole risk assessment from May of 2016 and August 2016, Plaintiff's risk assessment score would have been the same as the May 2016 score except that he was given two points in the drug/alcohol use/abuse category, which brought his *total* August 2016 risk assessment score to four. In any event, this was still considered a *low* score, and he also had a *low* risk score with a total score of two in May of 2016. There is nothing in the parole

risk assessment that attributes the increase in risk assessment to Dr. Caldwell-Barr's statements in her Static-99R form. Nor has Plaintiff presented evidence to otherwise support this assertion.

Notably, Plaintiff does not contend that he has a liberty interest in parole. Nor could he, because "Nevada's statutory parole scheme [ ] expressly disclaims any intent to create a liberty interest." *Moore v. Palmer*, 603 F.3d 658 (9th Cir. 2010). Nor does Plaintiff contend that Dr. Caldwell-Barr's risk assessment contained inaccurate information.

Second, it was not clearly established that a prison psychologist violates an inmate's due process rights when she provides her professional opinion pursuant to a statute that requires NDOC to assess sex offenders to determine their risk to reoffend in a sexual manner for review by the parole board before a scheduled parole hearing. And in this case, the inmate signed an agreement acknowledging the non-confidentiality and waived confidentiality throughout his involvement in the program. The court is not aware of any legal authority that would extend the United States Constitution's due process protections to this scenario. It is Plaintiff's burden to demonstrate that the right for which he seeks redress was clearly established, and he has not done so.

The court will now address some of the other arguments raised in Plaintiff's opposition brief.

To the extent Plaintiff argues that Dr. Caldwell-Barr violated the psychotherapist-patient privilege, he does not have such a claim proceeding in this action. Nor is it likely the federal court would have jurisdiction over such a claim.

To the extent Plaintiff argues that he did not have a chance to challenge Dr. Caldwell-Barr's assessment, such a claim is foreclosed. NRS 213.1214 specifically provides:

> *No cause of action may be brought* against the State, its political subdivisions, or the agencies, boards, commissions, departments,

11

> officers or *employees* of the State or its political subdivisions for *assessing*, not assessing or considering *or relying on an assessment of a prisoner*, if such decisions are made or conduct in compliance with the procedures set forth in this section.

NRS 213.1214(3) (emphasis added); *see also Coles v. Bisbee,* 422 P.3d 718, 721, 134 Nev. 508, 511-12 (2018) (inmate argued he was not permitted to review and contest the results of his Static-99R assessment, and Nevada Supreme Court held that the Nevada Legislature foreclosed such a right in the statute).

Finally, Plaintiff mentions in his response equal protection and sex offenders being treated differently than other inmates, but his complaint is not proceeding with an equal protection claim.

For these reasons, Defendant's motion for summary judgment should be granted on the basis that Dr. Caldwell-Barr is entitled to qualified immunity.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendant's Motion for Summary Judgment (ECF No. 30).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 25, 2021

_____
William G. Cobb
United States Magistrate Judge